IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


TAUREAN XAVIER PROCH,
    Plaintiff,

vs.                                          Case No.: 3:08cv484/MCR/EMT

ROBERT R. DEROCHE, et al.,
    Defendants.
_____/

## ORDER

       This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 6). Upon review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

       Plaintiff, an inmate of the Okaloosa County Jail at the time of the filing of this action, names two Defendants: Robert R. Deroche, a Crestview Police Officer, and Brian P. Mitchell, the Crestview Chief of Police (Doc. 1 at 1–2).

       Plaintiff alleges the following facts in support of his claims.[1] On May 12, 2008, at approximately 1:00 p.m., Defendant Deroche and Officer Donna Collins knocked on the door of Plaintiff's apartment. Dana McKinney, Plaintiff's girlfriend at the time, opened the door and was asked if "Tray" was there (Tray is Plaintiff's nickname). Plaintiff approached the door from the interior of the apartment to inquire as to the nature of the officers' visit.[2] Plaintiff asserts that as he

---

[1] All facts are derived from the Statement of Facts section of Plaintiff's complaint (Doc. 1 at 5 and continuation pages).

[2] Although Plaintiff alleges he did not know why the Officers were there, Plaintiff later determined, after reviewing discovery provided by the State in criminal proceedings related to this incident, that the Officers were responding to a neighbor's report of a verbal disturbance.

Page 2 of 7

approached the doorway he began to light a cigarette but was instructed by Officer Collins to stop. Plaintiff complied.  Next, Plaintiff alleges that Defendant Deroche, in an overly aggressive manner and without a warning or explanation, told Plaintiff to turn around and place his hands behind his back.

Plaintiff states that both Officers were wearing police uniforms, but Plaintiff did not see a marked patrol vehicle, which caused Plaintiff to question the officers' "authenticity of authority." Plaintiff therefore did not put his hands behind his back as instructed; rather, he placed his hands on the foyer wall just inside the door.  Plaintiff states that immediately upon placing his hands on the wall, Defendant Deroche pushed the door fully opened, slammed Ms. McKinney into the wall, un-holstered a weapon, pointed the weapon at Plaintiff, and yelled at Plaintiff to put his hands behind his back.[3]  Next, Officer Collins told Defendant Deroche to cover her while she handcuffed Plaintiff. As Officer Collins approached to handcuff Plaintiff, Defendant Deroche shot Plaintiff in the back with the taser.[4]

Lastly, Plaintiff alleges that Defendant Mitchell, in his official capacity as Chief of the Crestview Police Department, has a duty to protect citizens' constitutional rights.  Plaintiff contends that Defendant Mitchell has knowingly failed to provide such protection by allowing officers to use excessive force, such as random taser usage, and he is liable for the actions of his subordinates under the principle of respondeat superior.  Plaintiff claims that his case is not an isolated incident but one of many documented by the local media.

Plaintiff claims that the excessive use of force has harmed him physically (i.e., infection and scarring from the taser), mentally (i.e., emotional distress, insomnia, nightmares, depression, and post traumatic stress disorder for which he has been prescribed medication), and financially (apparently based on being subjected to false charges and losing his freedom "for a period of time

---

[3]Plaintiff states that he thought the weapon was a firearm, but he later discovered that the weapon was an Advanced Taser M26.

[4]Plaintiff asserts that he did not act aggressively and that Officer Deroche, in his written version of the incident, attests to the fact that Plaintiff "was not aggressive" when the taser was deployed.  Furthermore, Plaintiff states that his actions, statements, and posture could not have been construed as active physical resistance or an attempt to escape, despite admitting that he failed to comply with Defendant Deroche's instruction to place his hands behind his back.

which has yet to be determined"). As relief, Plaintiff seeks injunctive relief as well as punitive and compensatory damages in an unspecified amount (Doc. 1 at 7A).

Initially, Plaintiff has failed to state a basis for liability as to Defendant Mitchell. It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege that Defendant Mitchell personally participated in the alleged use of excessive force or directed the officers involved to act unlawfully. Moreover, although Plaintiff generally alleges a history of taser abuse within the Crestview Police Department, his allegations are conclusory. For example, Plaintiff does not allege when the other incidents occurred, whether Defendant Mitchell was the Chief of Police at the time of the other incidents, the nature or circumstances of any other incident, or whether officers involved in other incidents were cleared of any wrongdoing, or alternatively, reprimanded if it was determined that their actions were not justified. While Plaintiff alleges that local media has reported taser incidents, Plaintiff does not state when the reports were made, the nature of the reports, and whether the media reports were substantiated. Plaintiff is advised that conclusory allegations "will not support a claim under 1983." Hall v. Smith, No. 05-14291, 2006 WL 542561, at *2 (March 7, 2006). *See also* Marsh v. Butler County, Ala, 268 F. 3d 1014, 1036 (11th Cir. 2001) (holding unsupported conclusions of law or mixed questions of fact and law have long been recognized as not to prevent a Fed. R. Civ. P. 12(b) dismissal). "Abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration . . . ." Brown v. Crawford, 906 F. 2d 667, 671 (11th Cir. 1990). Therefore, Plaintiff should drop Defendant Mitchell as a Defendant unless additional facts exist and are alleged to support claims against him.

Plaintiff must also clarify his claims regarding Defendant Deroche. Initially, Plaintiff appears to raise a Fourth Amendment claim that Defendant Deroche used excessive force in effecting his arrest. However, Plaintiff does not clarify the status of any criminal charges that may have been brought against him in relation to the allegedly unlawful arrest.[5] This is important since, if charges have been brought, principles of comity announced in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), would dictate that Plaintiff's section 1983 claims for injunctive or declaratory relief be dismissed. *See* Hicks v. Miranda, 422 U.S. 332, 348–50, 95 S. Ct. 2281, 2291–92, 45 L. Ed. 2d 223 (1975). Additionally, Plaintiff's claims for monetary relief should at least be stayed pending the outcome of the state criminal proceedings. *See* Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 719–20, 116 S. Ct. 1712, 1722–23, 135 L. Ed. 2d 1 (1996); Deakins v. Monaghan, 484 U.S. 193, 201–02, 108 S. Ct. 523, 530, 98 L. Ed. 2d 529 (1987); Doby

---

[5] Plaintiff states he was subjected to "falsified charges" and imprisoned for an undetermined amount of time, but he does not state the nature of the charges, and he does not clarify whether he was convicted of any such charges.

v. Strength, 758 F.2d 1405, 1406 (11th Cir. 1985). The comity concern in this situation stems from the fact that the section 1983 action:

> may also have a substantially disruptive effect upon contemporary state criminal proceedings, and may also undermine the integrity of the writ of habeas corpus. Where the federal court . . . would have to make rulings by virtue of which the validity of a conviction in contemporary state proceedings would be called into question, the potential for federal-state friction [would be] obvious. The federal ruling would embarrass, and could even intrude into, the state proceedings. Questions concerning the effect to be given the federal ruling in the state courts might be difficult ones, and could lead to delay, or even derailment of the course of the state action.

Guerro v. Mulhearn, 498 F.2d 1249, 1253 (1st Cir. 1974).

In the instant case, the issue of excessive force may be presented in Plaintiff's defense to state criminal charges, if such charges have been filed. *See* Fla. Stand. Jury Inst. § 21.2 (2002) (to prove crime of resisting officer without violence, State must prove that at the time the officer was engaged in the lawful execution of a legal duty); Espiet v. State, 797 So. 2d 598, 602 (Fla. 5th DCA 2001) (element of crime of resisting officer without violence is requirement that the officer was engaged in the lawful performance of his duties at the time of the offense); Morley v. State, 362 So. 2d 1013, 1014 (Fla. 1st DCA 1978) (conviction for resisting arrest without violence could not stand where officer's arrest of defendant was improper); State v. Holley, 480 So.2d 94, 95-96 (Fla. 1985) (although a defendant cannot use force to resist an arrest, he may resist the use of excessive force in making the arrest); Jackson v. State, 463 So. 2d 372, 374 (Fla. 5th DCA 1985) (defendant charged with battery of an officer and resisting arrest with violence was entitled to jury instruction that it is lawful to defend oneself against unlawful or excessive force, even when being arrested); McPhee v. State, 616 So. 2d 483, 484 (Fla. 4th DCA 1993) (defendant charged with resisting arrest was entitled to jury instruction that if an officer uses excessive force to make an arrest, a person is justified in the use of reasonable force to defend himself, but only to the extent that he reasonably believes such force was necessary); O'Hara v. State, 642 So.2d 592, 594 (Fla. 4th DCA 1994) (defendant charged with resisting officer without violence was entitled to jury instruction on resisting unlawful arrest without violence and justifiable use of nondeadly force). Thus, to avoid parallel litigation of these issues and to preclude the possibility of conflicting resolutions in the state and federal proceedings, this court should abstain from ruling in the instant case until those issues have been determined in the state court.

As is evident from the foregoing discussion, Plaintiff must be specific in his amended complaint as to whether state criminal charges against him have been initiated and the status of those charges. For example, Plaintiff must include in his amended complaint the nature of all charges filed against him that are related to the events underlying this civil rights action, how those charges were resolved (i.e., plea, trial, or dismissal), and if Plaintiff was convicted of any charge relating to the underlying events, the sentence(s) he received.

Lastly, the court notes that Plaintiff's claims regarding the excessive use of force during his arrest have been brought under both the Fourth Amendment and, apparently, the Due Process Clause of the Fourteenth Amendment (*see* Doc. 5 at 7A). Where, as here, the excessive force claim arises in the context of an arrest, "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) (quoting U.S. CONST. amend. IV and citing Tennessee v. Garner, 471 U.S. 1, 7–22, 105 S. Ct. 1694, 1699–1707, 85 L.Ed.2d 1 (1985)). Moreover, if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See* County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (citations omitted). In short, a substantive due process analysis is inappropriate if Plaintiff's claims are covered by another constitutional amendment. *Id.* In the instant case, Plaintiff's claims are covered by the Fourth Amendment; therefore, his due process claim is subject to dismissal.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal, and Plaintiff is advised that the resulting dismissal would be without prejudice. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**." Plaintiff must name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged

constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. In the section titled "Statement of Claims," Plaintiff must state what rights or statutes he contends have been violated, and he must provide support in the statement of facts for the claimed violations. Plaintiff is advised that the amended complaint must contain all of his allegations, because when an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1. The clerk is directed to forward to Plaintiff a civil rights complaint form for use in prisoner actions under 42 U.S.C. § 1983. This case number should be written on the form.

2. Plaintiff shall have **THIRTY (30) DAYS** in which to file an amended civil rights complaint, which shall be typed or clearly written, submitted on the form, and marked "**Amended Complaint**." Alternatively, and within the same time, Plaintiff shall file a notice of voluntary dismissal.

3. Failure to submit an amended complaint as instructed may result in a recommendation of dismissal of this action.

**DONE AND ORDERED** this 19th day of June 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**