IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TAUREAN XAVIER PROCH,
      Plaintiff,

vs.                                 Case No.: 3:08cv484/MCR/EMT

ROBERT R. DeROCHE,
      Defendant.
_____/

## ORDER, SECOND REPORT AND RECOMMENDATION

Plaintiff Taurean Xavier Proch ("Proch"), a federal inmate, proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983 against Defendant Robert R. DeRoche ("DeRoche"), a police officer in the Crestview Police Department, Crestview, Florida.[1]  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b).  Presently before the court are the cross-motions for summary judgment filed by Proch (Doc. 94), and DeRoche (Doc. 105).  For the reasons set forth below, the court recommends that Proch's motion for summary judgment be denied and that DeRoche's motion for summary judgment be granted.

## Procedural History

---

[1] Proch initiated this action when he was incarcerated at the Okaloosa County Jail (*see* Doc. 1 at 2), and—as outlined below—the case arises from DeRoche's attempt to take Proch into custody prior to that incarceration.  After being jailed, Proch was out of custody briefly (*see* Doc. 12 at 2; Doc. 16).  Currently, Proch is incarcerated at the U.S. Penitentiary, Leavenworth, Kansas (Doc. 22), serving a 190-month sentence imposed in this district after he pleaded guilty to being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) and 924(e) (*see generally,* United States v. Proch, 3:09cr35/MCR).  The Eleventh Circuit recently affirmed Proch's federal sentence.  *See* United States v. Proch, 637 F.3d 1262 (11th Cir. 2011).

On May 26, 2011, adopting this court's recommendation, the district court denied DeRoche's motion to dismiss Proch's first amended complaint (*see* Docs. 12, 33, 50, and 56).[2] Subsequently, this court granted Proch's motion for leave to file a second amended complaint (Docs. 62, 63).[3] DeRoche answered, asserting, *inter alia*, the affirmative defense of qualified immunity (Doc. 64 at 3).[4] In the second amended complaint Proch alleges the following. On May 12, 2008, DeRoche and another Crestview Police Department officer, Donna Collins ("Collins"), came to the Crestview apartment at which Proch resided with his girlfriend, Dana McKinney ("McKinney"). Without explanation or introduction, DeRoche ordered Proch to turn around and place his hands behind his back. Proch turned but did not comply with the order to place his hands behind him because, under the circumstances, he was uncertain of DeRoche's authority to issue it. Proch instead placed his hands on the foyer wall of his apartment and waited as Collins approached to handcuff him. Without

---

[2] DeRoche moved for dismissal of the first amended complaint on the grounds it failed to state a claim upon which relief could be granted and he was entitled to qualified immunity (Doc. 33). In a Report and Recommendation dated March 11, 2011 (Doc. 50), this court concluded that DeRoche was not entitled to qualified immunity at the motion to dismiss stage of the proceedings with respect to a claim of the use of force during a lawful arrest or, if the allegations of the complaint were read liberally, any claim of unlawful arrest involving the use of force (*see* Doc. 50 at 8–9). The district court adopted the Report and Recommendation, but sustained DeRoche's objection that the first amended complaint did not assert a claim of unlawful arrest (*see* Docs. 50, 56). The district court further noted that even if the facts, liberally construed, might support such a claim it would be precluded by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (barring civil rights claims that necessarily implied the invalidity of a conviction that has not been reversed, expunged, or called into question) (Doc. 56 at 1, n.1).

[3] The second amended complaint (Doc. 63) remains the operative complaint in this case, notwithstanding the following history. On September 29, 2011, the court denied Proch's motion to file a third amended complaint which sought to assert approximately thirty-one new claims against seven new Defendants and seven new claims against DeRoche (Doc. 93). On October 11, 2011, without having sought review by the district court, Proch submitted a notice of filing an interlocutory appeal of the September 29, 2011, order in the Eleventh Circuit Court of Appeals (Doc. 96). The undersigned then issued an order advising the parties that, despite Proch's appeal, jurisdiction in the district court was retained over his pending motion for summary judgment and any motion for summary judgment filed by DeRoche (Doc. 100). Subsequently, Proch advised this court by notice that he wished to voluntarily dismiss the appeal, which notice the court directed the clerk to forward to the Eleventh Circuit (*see* Docs. 102, 103). On November 28, 2011, the Eleventh Circuit issued its mandate granting the voluntary dismissal (Doc. 107). Proch has also recently initiated another pro se civil rights action that is related to the events at issue in this case (*see* Proch v. DeRoche, Case No. 3:11cv502/RV/EMT).

[4] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

warning, DeRoche shot Proch in the back with a taser.[5]  Proch asserts that DeRoche thereby subjected him to excessive force in violation of the Fourth Amendment and Fla. Stat. § 943.1717. Proch claims that DeRoche's action caused him to suffer physical injuries, financial loss, and mental/emotional harm.[6]  As relief, Proch seeks monetary damages and other remedies (Doc. 63 at 10–12).

The parties engaged in discovery as instructed in this court's March 11, 2011, Case Management and Scheduling Order (Doc. 51).  After resolving several discovery disputes and allowing several extensions of the discovery deadline, the court directed the parties to conclude discovery no later than October 18, 2011 (*see* Docs. 66–82; 86; 89–93).  The clerk docketed Proch's instant motion for summary judgment pursuant to Fed. R. Civ. P. 56 on October 6, 2011 (Doc. 94), and DeRoche timely filed his Rule 56 motion on November 1, 2011 (Doc. 105).  The court issued advisement orders concerning summary judgment which provided the parties with information about Rule 56 review (*see* Docs. 100, 106).  The court's Case Management and Scheduling Order also instructed the parties as to the requirements and importance of summary judgment consideration (*see* Doc. 51 at 3).  DeRoche did not file a separate response to Proch's motion but advises that his own motion additionally serves as a response (Doc. 105 at 1, n.1).  The court gave Proch through November 22, 2011, in which to file a response to DeRoche's motion (Doc. 106), but he failed to timely do so.  Rather, in a motion dated November 30, 2011 [received by the clerk on December 5, 2011], Proch sought leave of court to file out-of-time his twenty-five page typewritten response (accompanied by 130 pages of exhibits) (*see* Docs. 108, 109).  DeRoche has responded, stating that he neither opposes nor supports Proch's request for an enlargement of time in which to file his response (Doc. 111).

---

[5]  As applicable to this case, a taser "is a non-deadly weapon commonly carried by law enforcement.  The taser administers an electric shock to a suspect by shooting two small probes into the suspect's body.  The probes are connected to the firing mechanism via wires.  Once fired, the probes lodge under the suspect's skin and administer an electric shock.  This type of taser permits the officer to incapacitate a suspect from a modest distance."  Fils v. City of Aventura, 647 F.3d 1272, 1277 n.2 (11th Cir. 2011).

[6]  Proch claims that he suffered permanent scarring of the skin where the taser probes were lodged.  He further claims that he experienced anguish, humiliation, and embarrassment which led to the loss of his relationship with McKinney, and insomnia, nightmares, flashbacks, and depression which have culminated in a diagnosis of and treatment for post-traumatic stress disorder.

**Preliminary Matters**

The court first court addresses Proch's motion to file his response to DeRoche's motion for summary judgment out-of-time.  Proch submits with his motion a declaration in which he states that he did not receive an order from the court directing him to file a response and that he submitted the response as quickly as possible after learning from a staff member in the office of DeRoche's counsel during a November 30, 2011, telephone conversation that the response was late (Doc. 108 at 3).  Based on this representation by Proch, the court finds good cause for the late filing.  *See* Fed. R. Civ. P. 6(b)(1)(B).  The court also notes the lack of opposition by DeRoche.  Proch's motion to file his response out-of-time (Doc. 108) is therefore granted, to the extent Document # 109 shall be considered as Proch's response to DeRoche's motion for summary judgment.[7]

The court next considers DeRoche's argument that Proch's motion for summary judgment should be denied on the ground it contains no separate statement of facts, a requirement established by this district's local rules and ordered by the court.  DeRoche also argues that the motion is deficient because it does not contain adequately specific references to the record evidence.

The pleadings of a pro se party are held to a less stringent standard than is applied to pleadings prepared by an attorney, and they must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).  Nevertheless, a pro se party must follow procedural rules and requirements.  *See* McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993) (while pleadings prepared by prisoners who do not have access to counsel must be construed liberally, the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *see also* Nelson v. Barden, 145 Fed. App'x 303, 311 n.10 (11th Cir. 2005) (courts generally will not excuse a pro se party's mistakes

---

[7] The court does not, as Proch additionally requests, accept or consider the filing as "an evidentiary amendment/supplement to Plaintiff's Motion for Summary Judgment [Doc. 94]."  (Doc. 109 at 1, n.1).  First, DeRoche has already responded to Proch's motion, as filed, and it would be unfair and inefficient to permit Proch to alter his motion at this late date.  Second, Proch has offered no authority or reason for allowing such treatment at this time nor is any reason evident, other than perhaps that the request is a belated attempt to bolster Proch's motion for summary judgment.  Third, because the evidence Proch submits with his response is either a duplicate of or an addition to evidence he has already filed, there is no need to consider it as an "evidentiary amendment/supplement."

regarding procedural rules); <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989) ("once a pro se litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure").  The only leeway the court may grant a pro se party is in liberally construing his pleadings in order to compensate for their inartfulness.  *See* <u>Miller v. Donald</u>, 541 F.3d 1091, 1100 (11th Cir. 2008); *see also* <u>Loren v. Sasser</u>, 309 F.3d 1296, 1301 (11th Cir. 2002) (stating that "[i]n the summary-judgment context, we construe pro se pleadings more liberally than those of a represented party").

Here, as DeRoche asserts, Proch's five-page motion for summary judgment (to which are attached some twenty-three pages of exhibits) does not contain a separate statement of undisputed material facts.  Nevertheless, the eight-paragraph, five-page motion (although also improperly interlaced with legal arguments and conclusions), does briefly set forth the material facts of Proch's claim:  that while Proch stood with his hands on the foyer wall of his apartment in a submissive posture, admittedly having failed to place his hands behind his back as ordered by DeRoche but having displayed no violence or aggression, DeRoche shot him with a taser (*see* Doc. 94 at ¶¶ 1, 2, 4, and 6).  In this court's view, this account or statement by Proch is sufficient to put DeRoche on notice that he must respond or risk having such factual statements deemed to have been admitted, as provided in N.D. Fla. Loc. R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement requirement to be filed and served by the opposing party.").  Indeed, DeRoche did adequately respond, in the form of his cross-motion for summary judgment containing a statement of materials facts and a "refu[ation of] each disputed factual allegation . . . ." (Doc. 105 at 7, n.3).  Additionally, Proch's motion contains references to the exhibits which, while general, are adequate for locating the pertinent source.  For these reasons, the court declines to recommend denial of Proch's summary judgment motion based on the procedural ground suggested by DeRoche.

**Material Facts**

On cross-motions for summary judgment, the court must construe facts and draw inferences "in favor of the party against whom the motion under consideration is made." Samuelson v. LaPorte Cmty. Sch. Corp., 526 F.3d 1046, 1051 (7th Cir. 2008) (internal quotation marks omitted). The court does so here, referring to the parties' statements of facts (*see* Doc. 105 at 2–5; Doc. 94 at 1–3; Doc. 109 at 3–4), and taking those facts from the parties' pleadings and summary judgment materials of record.[8] Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

---

[8] Proch's first and second amended complaints (Docs. 12 and 63) were signed under penalty of perjury. Such sworn pleadings are considered the equivalent of an affidavit and are competent evidence for summary judgment purposes in this case insofar as they assert non-conclusory allegations based on Proch's personal knowledge. Sammons v. Taylor, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992); Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986). To the extent warranted, the court therefore has considered these pleadings. Additionally, insofar as they contain relevant information, the court has considered the following summary judgment materials:

The seven exhibits attached to DeRoche's motion: Exh. 1, Collins' May 12, 2008, Offense/Incident Report (Doc. 105-1); Exh. 2, DeRoche's affidavit (Doc. 105-2); Exh. 3, Collins' affidavit (Doc. 105-3); Exh. 4, DeRoche's May 12, 2008, Offense/Incident Report (Doc. 105-4); Exh. 5, a "composite" exhibit containing DeRoche's request for admissions and Proch's responses thereto (Doc. 105-5); Exh. 6, a copy of Proch's motion for summary judgment (Doc. 105-6); and Exh. 7, a second "composite" exhibit containing the supplemental narratives of three Crestview Police Department officers dated May 17, 2008, through May 20, 2008 (Doc. 105-7).

The sixteen exhibits attached to Proch's response (Doc. 109-1): Exh. 1, Collins' May 12, 2008, Offense/Incident Report; Exh. 2, Collins' affidavit; Exh. 3, DeRoche's May 12, 2008, Offense/Incident Report; and Exh. 4, DeRoche's affidavit [these four exhibits are duplicates of exhibits submitted by DeRoche]. The remaining exhibits are either copies of exhibits that Proch submitted with his motion for summary judgment or are new exhibits: Exh. 6, May 12, 2008, Affidavit of Complaint signed by Rene Stern; Exh. 8, May 12, 2008, Supervisory Taser Use Report; Exh. 9, a redacted version of the Crestview Police Department's manual on taser use; Exh. 10, DeRoche's Employee Performance Evaluations for March 2007 through March 2009 and March 2010 through March 2011; Exh. 11, March 22, 2011, letter to City of Crestview Chief of Police concerning DeRoche's employment performance; Exh. 12, June 10, 2008, Proch's psychiatric and medical records; Exh. 13, Proch's interrogatories to DeRoche, and DeRoche's answers thereto; Exh. 14, Proch's first request for admissions, and DeRoche's responses thereto, plus other assorted documents; Exh. 15, Proch's second request for admissions, and DeRoche's responses thereto; and Exh. 16, Proch's May 17, 2008, redacted arrest report.

Exhibit 5, Proch's declaration, is deficient, as it lacks the date it was executed as required by 28 U.S.C. § 1746. While an undated declaration may be properly excluded from summary judgment consideration, *see* Bonds v. Cox, 20 F.3d 697, 702 (6th Cir. 1994), "courts have held that the absence of a date on such documents does not render them invalid if extrinsic evidence could demonstrate the period when the document was signed." Peters v. Lincoln Elec. Co., 285 F.3d 456, 475–76 (6th Cir. 2002) (citation omitted). Here, the document itself indicates that Proch signed it in Leavenworth, Kansas, where he currently is incarcerated. For purposes of this summary judgment consideration, the court concludes that extrinsic evidence could demonstrate the period when the declaration was signed and therefore it has considered it. Exhibit 7, McKinney's statement, has also been considered although it too is technically deficient. The photocopy of this statement submitted to the court, while showing the date signed and bearing a notary public's stamp, was duplicated in such a way that it does not contain the complete oath.

Finally, because some of Proch's summary judgment materials contain sensitive employment and medical records, the court directed the clerk to seal Document # 109 (*see* Doc. 110).

The initial sequence of events is not in dispute.  At approximately 1:00 p.m., on May 12, 2008, DeRoche and Collins approached and knocked on the front door of the Crestview apartment in which Proch lived with McKinney (Doc. 63 at 5; Doc. 64 at 1).  Both officers were dressed in Crestview Police Department uniforms (Doc. 105-5 at 2–3, 7).  Shortly prior to going to the Proch/McKinney apartment, Collins had gone to another apartment in the same complex where Rene Stern ("Stern") resided, in response to a call from dispatch regarding a verbal disturbance (Doc 105-1 at 1; Doc. 105-2 at 2).

There is some disagreement between the parties as to the events that occurred just prior to DeRoche's and Collins' arrival at the Proch/McKinney apartment.  According to DeRoche, Stern informed Collins that Proch, who was "her girlfriend's boyfriend," had entered her apartment earlier, uninvited (Doc. 105-1 at 2).  Proch had become upset with Stern after learning that McKinney had discussed with Stern problems she was having in her relationship with Proch.  Angry and cursing at Stern, Proch threw Stern's cell phone, valued at $200.00, against a door, causing it to shatter into "many pieces" (Doc. 105-3 at 2–3; Doc. 105-2 at 2; Doc. 105-4 at 1).  Proch denies that the cell phone belonged to Stern or that he entered her apartment without permission (Doc. 105-5 at 2, 7); rather, he maintains that the phone in fact was his and merely on loan to Stern and that he, Stern, and McKinney "regularly entered each others['] apartments without knocking or requesting admittance verbally" as was their "custom as friends" (*id.;* Doc. 94 at 15; Doc. 109 at 3).  Proch also asserts that he did not threaten Stern (Doc. 109 at 3, citing Exhs. 1, 6).

Based on Stern's statements to her, Collins believed that Proch had committed criminal acts (Doc. 105-3 at 3).  Collins therefore prepared an affidavit of complaint for Stern to complete and sign.  The information alleged by Proch—that he owned the cell phone and had a standing invitation to enter Stern's apartment—was not the information Stern relayed in the affidavit she signed (*see* Doc. 109-1 at 22, Exh. 6).  As the affidavit was being processed, DeRoche arrived at Stern's apartment (Doc. 105-3 at 3).  After confirming Stern's statements with her and collecting pieces of the broken cell phone as evidence, DeRoche—along with Collins—proceeded to the Proch/McKinney residence (to which Stern thought Proch had returned after the incident) with the intention of arresting Proch for burglary and criminal mischief (Doc. 105-2 at 2).  At DeRoche's knock, McKinney opened the front door of the apartment.  DeRoche asked McKinney whether

"Tray"—which is Proch's nickname—was there (Doc. 63 at 5),[9] and Proch came forward (*id.;* Doc. 105-2 at 2).  According to DeRoche, Proch stepped outside the apartment at that time and stood next to the doorway (Doc. 105-2 at 3).  Proch disputes DeRoche's assertion that he exited the apartment; rather, Proch contends that in approaching DeRoche he stayed inside the foyer of the apartment and did not cross the threshold of the doorway (Doc. 63 at 5).  Proch began to light a cigarette but was immediately ordered to stop doing so (*id.* at 5–6).  According to Proch, he could not "fathom why [his] liberty was being restrained" (*id.* at 6), but the parties agree that he quickly complied with the order.

DeRoche and Proch disagree sharply as to what occurred next.  According to DeRoche, he explained to Proch the contents of Stern's affidavit (Doc. 105-3 at 3).  DeRoche contends that he directed Proch to turn around and place his hands behind his back (*id.;* Doc. 105-2 at 3).  When Proch failed to comply, DeRoche grasped Proch's left wrist to place him into handcuffs (Doc. 105-2 at 3; Doc. 105-4 at 3).  Proch pulled away from DeRoche and retreated into the apartment (Doc. 105-2 at 3; Doc. 105-4 at 3).  As Proch entered the apartment, DeRoche drew his taser, and Proch stopped (Doc. 105-2 at 3).  DeRoche again ordered Proch to place his hands behind his back, but instead Proch turned and placed his hands on the nearby foyer wall.  Proch continued to refuse to comply with DeRoche's command to place his hands behind his back (*id.*).  As DeRoche recalls, Proch began to remove and then replace his hands on the wall, all the while moving toward the interior of the apartment (*id.*).  In her affidavit, Collins remembers that after Proch failed to comply with the repeated command to place his hands behind his back, Proch "began to slide his hands along the wall in the direction of the inside of the apartment" Doc. 105-3 at 3–4).  In her report, Collins also states that after initially placing his hands on the foyer wall, Proch "pulled his hands from the wall about 4", but never put them behind his back" (Doc. 105-1 at 2).  According to DeRoche, "[b]elieving that Proch had no intention of complying with my commands, and fearful that he may flee or that there may be weapons in the apartment [ ] which Proch could use to attack

---

[9]  In her handwritten Affidavit of Complaint Stern named "Tr[a]y" as the man who had entered her apartment and broken her cell phone (Doc. 109-1 at 22).  McKinney identified Proch as "Brandon L. Cordell" (Doc. 105-4 at 2) but this name was later determined to be false.  Law enforcement determined Proch's correct identity on May 16, 2008 (*id.* at 5).

myself or others, I deployed the Taser" (Doc. 105-2 at 3).  DeRoche fired the taser one time, releasing two probes that struck Proch in the left side/shoulder area (Doc. 105-4 at 3; Doc. 105-3 at 4).

Proch's version of these events is markedly different.  He asserts that after he extinguished his cigarette DeRoche immediately, with no introduction or explanation of any sort and without telling Proch he was under arrest, "aggressively" ordered Proch to turn around and place his hands behind his back (Doc. 63 at 6; Doc. 109-1 at 18–19).  Unconvinced of the officers' "authenticity of authority," Proch—who maintains he was within the apartment at that time—decided to turn around and place his hands on the foyer wall just inside the door (*id.*).  Proch states that this action was meant to convey his "lack of intention to cause [the officers] any harm or trouble.  I did, as any reasonable, free citizen would expect, some sort of explanation prior to being placed in restraints, though" (*id.*).  Proch states that immediately upon placing his hands on the wall in what he describes as a "submissive" position, DeRoche forcefully pushed the door fully open, slamming McKinney into the wall, and unholstered and pointed a weapon at him[10] (*id.* at 7).  DeRoche screamed at Proch to put his hands behind his back but Proch did not.  According to Proch, his hands remained on the wall until the moment DeRoche deployed the taser (Doc. 109-1 at 19).  Moreover, Proch contends, prior to the discharge of the taser, he and DeRoche had no physical contact, i.e., DeRoche did not grasp his wrist (Doc. 109 at 3; *see* Doc. 109-1 at 19).  Proch also denies that he began to slide his hands along the foyer wall in the direction of the center of the apartment (Doc. 105-5 at 4, 9).  Proch maintains that as these events unfolded—with DeRoche, Collins, Proch, and McKinney all standing within "the close confines of the foyer" (Doc. 63 at 7)—McKinney and Proch repeatedly asked the officers what was going on.  More specifically, Proch asserts that, frightened and with his hands still on the wall, he pleaded, "'I'm in my own home and I've done nothing wrong.  Please, tell me what's going on.'" (*Id.*).  The officers did not respond.  Proch asserts that DeRoche did not warn him that his noncompliance with the order to place his hands behind his back could result in a taser deployment.  Proch states that although he did not place his hands behind him as commanded he

---

[10] Proch states that he believed at the time that the weapon was a firearm but later discovered the weapon was an Advanced Taser M26.

"fully intended to comply" with the handcuffing, had ceased pleading for information, had not been violent, and had not attempted to flee (*id.* at 8–9; Doc. 109 at 4; Doc. 109-1 at 19).  Collins told DeRoche to cover her while she handcuffed Proch.  According to Proch, as Collins approached to handcuff him, with Proch displaying no aggression and his hands located on the foyer wall, DeRoche deployed the taser, shooting Proch in the back (*id.* at 8).

DeRoche outlines some additional events not mentioned by Proch in his complaints but which Proch acknowledges, although disagrees with at least in part, in his response to the motion for summary judgment.  As DeRoche describes it, when Proch was struck by the taser probes, he momentarily fell but immediately rose to his knees, and then to his feet and charged toward DeRoche, pushing past Collins (*id.*; Doc. 105-4 at 3).  Collins recalled that Proch did not fall to the floor but rather went down in a "crouching" position, rising immediately and was "like a lion" (Doc. 105-3 at 4).  According to Collins, Proch slammed her into the foyer wall as he ran by her (*id.).* Proch and DeRoche struggled for possession of the taser, with Proch ultimately grabbing it and fleeing the residence (Doc. 105-2 at 3).  As he fled, Proch threw the taser against an outside wall or to the ground, breaking it into pieces; he continued running through the complex parking lot and ultimately off the premises (*id.*; Doc. 105-3 at 4).  DeRoche pursued Proch on foot but was unsuccessful in apprehending him (Doc. 105-4 at 3).  Four days later, on May 16, 2008, after a manhunt that included the use of a helicopter and K-9 trackers, Crestview Police Department officers, assisted by the Walton County Sheriff's Office, located Proch in a wooded area and arrested him (*see* Doc. 105-7 at 1–4).

In response, Proch contends that he in fact fell to the floor after DeRoche tased him and was more than just briefly stunned (Doc. 105-5 at 4, 9).  Proch submits that he was subjected to "the worst pain" he has ever felt; moreover, as a result of the experience, he now suffers from post-traumatic stress disorder (Doc. 109 at 4; Doc. 109-1 at 20).  In his second amended complaint Proch alleges that subsequent to his arrest, he was charged with numerous felony offenses and incarcerated for six months as he awaited disposition of the charges (Doc. 63 at 10).  Ultimately, according to Proch's allegation in the second amended complaint, he entered a plea to misdemeanor trespass

(with the other charges pertaining to his encounter with DeRoche being dismissed), was sentenced to time served on that charge, and released from confinement (*id.*).[11]

**Applicable Standards of Review**

    Summary Judgment

    In order to prevail on a motion for summary judgment, the movant must show that the non-movant has no evidence to support his case or present affirmative evidence that the nonmovant will be unable to prove his case at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986).  If the defendant successfully negates an essential element of the plaintiff's case, the burden shifts to the plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  The nonmovant must show more than the existence of a "metaphysical doubt" regarding the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).  "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.  The nonmovant must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236

---

[11]  The allegations of Proch's first amended complaint are more specific.  In it Proch states that he was charged with two counts of battery on a law enforcement officer, depriving a law enforcement officer with a means of defense, burglary of an occupied dwelling, escape, felony criminal mischief, misdemeanor criminal mischief, and resisting an officer without violence (Doc. 12 at 8).  According to the first amended complaint, when Proch entered the no contest plea to trespass and resisting an officer without violence, the other state charges were dismissed after being nolle prossed (*id.*).  Given the added details included in Proch's first amended complaint regarding the charges brought against him and their disposition, the court relies on that complaint for the relevant facts.

(11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). Conclusory, uncorroborated allegations by a nonmovant in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion. *See* Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Evidence presented by a party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to that party Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, the party opposing summary judgment still bears the burden of coming forward with sufficient evidence of every element that he must prove. Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). The court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed. United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

Fourth Amendment

Excessive force claims arise from the Fourth Amendment's protection "against unreasonable . . . seizures." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). The Supreme Court has "recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. If, however, an officer's use of force was "objectively [un]reasonable in light of the facts and circumstances confronting" him, the use of force is excessive under the Fourth Amendment. *Id.* at 397 (citations and internal quotation marks omitted). Courts must judge reasonableness "from the perspective of the reasonable officer on the scene" without the benefit of hindsight. *Id.* at 396. This standard "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Whether an officer's conduct was reasonable is a determination that "cuts both ways." Fils, 647 F.3d at 1288. The court cannot, at summary judgment, "simply accept the officer's subjective version of events" but rather it "must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances." *Id.*, citing Vinyard v. Wilson, 311 F.3d 1340, 1347–48 (11th Cir. 2002); *see also* Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009) (noting that when evaluating an excessive force claim, the court must analyze the particular facts of each case to "determine whether the force used was justified under the totality of the circumstances."). "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Garczynski, 573 F.3d at 1166–67 (internal quotation marks omitted). Under Graham, the factors used to determine reasonableness include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Secondary factors that may also be instructive in determining whether an officer's use of force was objectively reasonably include: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." Hadley v.

Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (quotation omitted); Buckley v. Haddock, 292 Fed. App'x 791, 793 (11th Cir. 2008).

Qualified Immunity

"The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The immunity is not only a defense from personal liability for government officials sued in their individual capacities, but also a defense from suit. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

Qualified immunity involves a two-part analysis. First, at summary judgment the court must determine whether the plaintiff's allegations, and the evidence viewed in his favor, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 200–02, 121 S. Ct. 2151, 2155–56, 150 L. Ed. 2d 272 (2001). Second, the constitutional right at issue must have been "clearly established," such that a reasonable officer should have known that his conduct violated the plaintiff's constitutional rights. Id. "Both elements must be satisfied for an official to lose qualified immunity." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010). The steps need not be analyzed sequentially; if the law was not clearly established, the court is not required to decide if the defendant actually violated the plaintiff's rights, although it may do so. Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009), citing Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

In the Eleventh Circuit there are two methods to determine whether a reasonable officer would know that his conduct is unconstitutional. Under the first, and usual, method the relevant case law at the time of the violation is considered; the right is clearly established if "a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law." Hadley, 526 F.3d at 1333 (citation and internal quotations omitted). In Denno v. School Board of Volusia County, Florida, 218 F.3d 1267, 1270 (11th Cir. 2000), the Eleventh Circuit instructed that to meet his burden a plaintiff may "point to case law which predates the

official's alleged improper conduct, which case law involves materially similar facts and truly compels the conclusion that the plaintiff had a right under federal law." *Id.* (citation omitted). Before qualified immunity may be surrendered, "preexisting law must dictate, that is, truly compel, (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Id.*

Under the narrow exception to the usual rule for assessing whether a constitutional right was clearly established, termed the "obvious clarity" exception, the court considers not the case law but rather the officer's conduct; the relevant inquiry is whether that conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law." Vinyard, 311 F.3d at 1355 (citations and internal quotations omitted). This exception applies where the officer's conduct is so outrageous that it clearly goes beyond the "hazy border between excessive and acceptable force," Lee, 284 F.3d at 1198–99, even in the absence of case law. Reese v. Herbert, 527 F.3d 1253, 1274 (11th Cir. 2008).

**Discussion**

Fourth Amendment Claim

The court first considers DeRoche's motion for summary judgment. In reviewing the motion, the court views the undisputed facts in the light most favorable to Proch. As discussed below, so doing and applying the Graham factors and other secondary factors, the court concludes that DeRoche's actions in attempting to arrest Proch do not constitute an unreasonable use of force.[12]

---

[12] This is the only claim the court addresses, although in his instant motion DeRoche argues for dismissal based on qualified immunity of any claim of unlawful arrest that may be gleaned from the second amended complaint. Given that the first and second amended complaints contain similar allegations and that the district court has already spoken on the matter of any claim of unlawful arrest, *see* n.2, *supra*, this court finds it unnecessary to revisit the question here and declines to do so, at least at any length.

To the extent a claim of unlawful arrest has been raised in the second amended complaint, which this court doubts, DeRoche should be entitled to qualified immunity because probable cause existed for the arrest. *See* Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002). Under Florida law, a plea of nolo contendere is equivalent to a conviction, *see* Fla. Stat. § 960.291(3), and a judgment of conviction is conclusive evidence of probable cause unless the judgment was obtained by fraud, perjury, or other corrupt means. Behm v. Campbell, 925 So.2d 1070, 1072 (Fla. 5th DCA 2006). Proch does not assert that his nolo contendere pleas were obtained by fraud or any corrupt means. Accordingly, his convictions for trespass and resisting an officer without violence establish conclusive proof of probable

Even assuming otherwise, however, the court concludes that DeRoche is entitled to qualified immunity.

With respect to the first <u>Graham</u> factor, i.e., the severity of the suspected crime, based on the information known to them at the time, DeRoche and Collins went to the McKinney/Proch residence to arrest Proch for burglary which, without question, is a serious crime.[13]  This factor therefore favors DeRoche.

The second <u>Graham</u> factor involves whether the suspect posed an immediate threat to the safety of the arresting officers or others.  Here, that question may be answered in the affirmative.  Under Proch's version of the facts, which the court accepts for purposes of DeRoche's summary judgment motion, he was standing next to the foyer wall with his hands on it, displaying no aggression to the officers though having failed to place his hands behind his back as commanded.  The undisputed summary judgment record also reflects, however, that the officers were proceeding on information alleged by Stern, specifically that Proch had entered Stern's apartment without permission, cursed her about a discussion she and McKinney had earlier regarding Proch and McKinney's romantic relationship, and thrown Stern's cell phone against a door with enough force to break it into many pieces.  This reported conduct—an unauthorized entry into a woman's residence followed by an emotional outburst regarding a domestic situation which culminated in violence, albeit to property, and which had occurred only a short while beforehand—reasonably implies the risk of an immediate threat to the safety of the officers confronting and intending to arrest the suspect involved.  And, as Proch readily concedes, he did not comply with DeRoche's orders to place his hands behind his back.  In objective terms, Proch's refusal to place his hands *behind his back* as commanded enhanced his ability to resist suddenly and violently and, consequently, increased the threat to the officers' safety.  That Proch chose to place his hands on the

cause for DeRoche to arrest Proch.  And since probable cause existed, DeRoche may be granted qualified immunity on any claim of unlawful arrest.

[13]  Under Florida law, burglary is a felony.  *See generally*, Fla. Stat. § 810.02.  Even if it considers the offenses with which Proch says he ultimately was charged and of which he admits he was convicted, the court concludes that a serious crime was involved.  One of those offenses, resisting an officer without violence, is a first degree misdemeanor under Florida law that is punishable by a term of imprisonment not exceeding one year.  *See generally,* Fla. Stat. §§ 843.02, 775.082(4)(a)(b).

foyer wall does not alter this conclusion: with Proch continuing to refuse to place his hands behind his back in a position of submission and relative vulnerability, he remained unsecured and, especially considering the limited information known to the arresting officers at that time, dangerous to them.[14]  For these reasons, the court concludes that the second <u>Graham</u> factor should also favor DeRoche.

The third <u>Graham</u> factor, which is whether the suspect is actively resisting arrest or attempting to evade arrest by flight, likewise favors DeRoche.  Under Proch's facts, during the incident he neither pulled away from DeRoche's grasp nor attempted to move down the hallway into the interior of the apartment.  He simply failed to place his hands behind his back but, otherwise standing quietly, instead placed them on a nearby wall.  Accepting Proch's version of the facts, as it must on DeRoche's motion, the court concludes that prior to the tasing Proch made no attempt to evade arrest by moving toward the interior of the apartment or to resist arrest by pulling away from DeRoche's grasp.  The court disagrees, however, with Proch's apparent premise that equates "active" resistance to forceful physical resistance (*see* Doc. 109 at 10–11) and his conclusion that his undisputed actions do not constitute active resistance to being arrested.  Proch admits that he purposely refused to place his hands behind his back as ordered and that he purposely placed them on the foyer wall in front of him.  Both of these actions were intentional and both interfered with the officers' efforts to handcuff Proch and take him into custody.  Thus, in the court's view, the actions effectively amounted to Proch's active resistance to arrest.  Although Proch represents that in his mind he "fully intended to comply" with Collins' handcuffing (Doc. 63 at 8), his actions—as reasonably ascertained by the officers on the scene and as objectively viewed at summary judgment—reflect otherwise.  Had Proch intended to signal to the officers that he indeed was, as he contends, "waiting to be handcuffed by Officer Collins" immediately prior to the tasing (Doc. 109 at12), his hands would have been behind his back.  Without dispute, they were not, despite Proch's

---

[14]  The court has no doubt but that the position against the wall that Proch took, because he says he felt uncertain of the arresting officers' authority and therefore vulnerable to them, in fact served to make DeRoche and Collins more vulnerable to Proch, particularly so in the tight quarters near the apartment door.  It put Collins in the position—while attempting to cuff Proch—of having to reach around him from behind or the side, grab his wrists, and draw his arms back.  This procedure obviously would present more risk than simply applying the handcuffs behind Proch's back where his hands and arms could have been more easily controlled and his wrists could have been more safely and quickly cuffed together.

having had ample opportunity to comply with commands to do so. Thus, even if Proch did not physically struggle, show overt aggression, or otherwise fight prior to being tased, the actions in which Proch admittedly engaged—including refusing to obey commands and placing his hands in front of him on a wall instead of behind him—amounted to active resistance to arrest. *See* Buckley, 292 Fed. App'x at 794, 798 (noting that handcuffed suspect's repeated refusal "to comply with the most minimal of police instructions—that is, to stand up and walk to the patrol car" constituted resisting arrest*); see also* McQueen v. Morgan, 2011 WL 4552190, at *3 (N.D. Fla. 2011) (applying third Graham factor and concluding that, prior to being tased, plaintiff resisted arrest by failing to comply with deputies' repeated verbal orders).

The court also briefly addresses several additional, secondary factors in considering whether DeRoche's use of force was objectively reasonably. *See* Hadley, 526 F.3d at 1329 (listing several additional considerations for assessing excessive force claim). Based on the undisputed summary judgment evidence, as viewed in the light most favorable to Proch, in light of the threat posed by Proch and his resistance to arrest the court concludes there was a need for the application of some force—including the option of a single taser discharge—in order to effectuate the arrest. *See* Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (stating that "[a]lthough being struck by a taser gun is an unpleasant experience, the amount of force Reynolds used—a single use of the taser gun causing a one-time shocking—was reasonably proportionate to the need for force . . ."). Next, while Proch complains that he suffered burns to his skin as a result of the tasing and while such injuries may not be insignificant, they also do not appear to be severe; the record does not contain evidence of treatment for them either contemporaneously or later. *See id.* at 1278 (noting that single use of taser "did not inflict any serious injury. Indeed, the police video shows that Draper was standing up, handcuffed, and coherent shortly after the taser gun stunned and calmed him."). Similar to the plaintiff in Draper, the evidence in this case shows that Proch, though suffering immediate pain from the single tasing, was only briefly physically impaired. Furthermore, Proch was able to rise, struggle successfully with DeRoche for possession of the taser, flee almost immediately, and remain at large for several days. Thus it appears that the force employed may be characterized "as—at most—moderate, non-lethal force." Buckley, 292 Fed. App'x at 795. Proch also alleges that he suffers from post-traumatic stress disorder as a result of DeRoche's tasing, an assertion he seeks to

support with several pages of medical records (Doc. 109-1 at 61–69).  These records reflect that Proch has been diagnosed with and treated for the disorder; however, other than through Proch's subjective statements they do not establish a causal relationship linking the condition to DeRoche's conduct on May 12, 2008.  Also, the record appears to reflect that Proch suffers from another mental condition, schizophrenia (*see id.* at 68).  *See* McCullough v. Antolini, 559 F.3d 1201, 1200 (11th Cir. 2009) ("reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time.").  Finally, in asserting that DeRoche deployed his taser maliciously and sadistically rather than in good faith, Proch essentially relies on his prior arguments, which the court has previously discounted.  The undisputed facts, even accepted in the light most favorable to Proch, do not suggest that DeRoche acted with malice.  Proch's contentions otherwise are speculative and unsupported by evidence.

In short, viewing the undisputed facts and summary judgment evidence in the light most favorable to Proch and applying the Graham and other secondary factors, the court concludes that DeRoche's tasing of Proch did not amount to the unconstitutional use of force.  Because the court concludes that DeRoche's conduct did not cause Proch to suffer a constitutional deprivation, it need not decide whether DeRoche is entitled to qualified immunity.  *See* Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (absent a constitutional injury, qualified immunity analysis is unnecessary).  Nevertheless, even assuming that DeRoche used excessive force to attempt to arrest Proch in violation of the Fourth Amendment, the court concludes DeRoche would be entitled to qualified immunity.

The Eleventh Circuit has instructed that, in order for a constitutional right to be clearly established, "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  Oliver, 586 F.3d at 907 (citation omitted).  Prior existing case law will give adequate notice to an officer when the circumstances are "materially similar" and not "fairly distinguishable."  *See* Vinyard, 311 F.3d at 1352.  The Supreme Court "[does] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  Ashcroft v. al-Kidd, ___U.S.____, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).  In determining if existing case law provided an officer with fair warning that a specific

use of force was unlawful "beyond debate," courts should look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." *Id.* In arguing here that it was clearly established in May 2008 that the forced used by DeRoche was excessive, Proch appears to primarily rely on four cases from this circuit (*see* Doc. 109 at 21–24): Powell v. Haddock, 366 Fed. App'x 29 (11th Cir. 2010) (per curiam); Hadley v. Guitierrez, 526 F.3d 1324 (11th Cir. 2008); Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008); and Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002). As discussed below, these cases do not clearly establish the unconstitutionality of DeRoche's actions in May 2008.

First, as an unpublished case, Powell v. Haddock, 366 Fed. App'x 29 (11th Cir. 2010) (per curiam), is not binding authority. It also does not predate the May 2008 tasing incident at issue in this case. Regardless, the facts of Powell are not well aligned with those of the instant one. In Powell, the suspect was tased two times even though she had committed no crime and "there was no instruction given that Powell failed to obey." Powell, 366 Fed. App'x at 30–31. Here, Proch was suspected of having committed two crimes and he refused to obey repeated commands to place his hands behind his back. Furthermore, although the summary judgment evidence does not reflect that Proch's "behavior was violent, aggressive, and prolonged," *see* Mann v. Taser Intern., Inc., 588 F.3d 1291, 1306 (11th Cir. 2009), it does reflect that his noncompliant conduct posed a potential threat to the arresting officers.

Proch's reliance on Hadley v. Guitierrez, 526 F.3d 1324 (11th Cir. 2008), is equally unavailing.[15] The facts in Hadley involved a single punch to the stomach of a suspect who "was handcuffed and not struggling or resisting." Hadley, 526 F.3d at 1330. The Eleventh Circuit denied qualified immunity to the officer who had punched Hadley, stating that "[o]ur cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Id.* Here, however, it is undisputed that Proch had not placed his hands behind his back for handcuffing and was not yet handcuffed when DeRoche discharged his taser. Moreover, the court has concluded that Proch's actions in refusing to comply with commands to place his hands behind

---

[15]  The court notes that Hadley was decided May 6, 2008, or less than one week prior to the events at issue in the instant case.

his back and instead placing them on a wall amounted to resisting arrest, although he was not physically struggling. While, as he argues, Proch was unarmed and not aggressive, he nevertheless clearly was not, despite his contention otherwise, "submissive" (Doc. 109 at 22). As the facts of the instant case are unlike those in Hadley they do not support a finding that DeRoche used gratuitous force against Proch which would preclude granting DeRoche qualified immunity.

In Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), the Eleventh Circuit denied qualified immunity to an officer who pepper sprayed a woman under arrest for disorderly conduct and obstruction whom the officer had been transporting in the back of his cruiser. The court held that "using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." Vinyard, 311 F.3d at 1348. Nevertheless, "using pepper spray is reasonable [ ] where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital." Id. In the instant case, unlike Vinyard, the offenses were not minor infractions. Also, even if Proch intended to surrender, as he contends, and was not violent, he clearly was not secured and, under the circumstances of this case in which he refused to comply with repeated orders to place his hands behind his back, reasonably posed a threat to the officers' safety.

Finally, to the extent Proch relies on Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008), this case—which was decided May 16, 2008—likewise does not show that it was clearly established on May 12, 2008, that DeRoche's use of force was excessive. In Reese the Eleventh Circuit applied Vinyard to deny qualified immunity to officers who used pepper spray in the face of an arrestee who "was lying face down on the ground, was not suspected of having committed a serious crime, did not pose an immediate threat of harm to anyone, and was not actively resisting or evading arrest . . . ." Id. As discussed, Proch was not secured, was suspected of having committed a serious crime, posed an immediate threat of some harm to the arresting officers, and actively resisted being handcuffed. Thus the facts of Reese are materially distinguishable from those in the instant case.

The Eleventh Circuit's decision in Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004), is applicable to this case. In Draper, the defendant officer pulled over the driver of a tractor trailer truck at night for the minor offense of an improperly illuminated license tag. Id. at 1272. The driver, Draper, was unarmed and did not attempt to flee; also, there was no violence or report of

violence concerning him.  *See generally, id.* at 1272–74.  Nevertheless, he yelled profanely at the officer, paced, and repeatedly refused to comply with the officer's commands to get a log book and some other documents out of his truck.   The court described Draper's manner as "hostile, belligerent, and uncooperative." *Id.* at 1278.  After Draper refused, for the fifth time, to comply with the officer's command to gather the documents, the officer tased him one time in the chest.  Under these facts, the Eleventh Circuit found no constitutional violation, concluding that tasing Draper once "was reasonably proportionate to the difficult, tense and uncertain situation that [the officer] faced at this traffic stop, and did not constitute excessive force."  *Id.*

In the instant case, unlike Draper, Proch was not hostile or belligerent.  Like Draper, however, Proch repeatedly refused to comply with an officer's commands and was uncooperative.  Also, although Proch was unarmed and, under his facts, he did not attempt to flee, his underlying suspected crime was serious, not minor as in Draper, and there had been a report of some violence, albeit against property and not a person.  Based on the facts and reasoning of Draper, the court concludes that DeRoche's use of his taser did not violate Proch's clearly established constitutional rights.  Accordingly, the existing law at the time of the May 2008 incident did not put DeRoche on notice that a single deployment of his taser to subdue the noncompliant Proch, under tense and uncertain circumstances, constituted the use of excessive force.  *See* Hadley, 526 F.3d at 1333 (noting that a right is clearly established if "a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law."); *see also* Floyd v. Corder, 426 Fed. App'x 790 (11th Cir. 2011) (stating that even if defendant's October 2007 use of taser three times to subdue noncompliant suspect where underlying crime was minor and no violence had occurred constituted excessive force, he was entitled to qualified immunity based on Draper).

The court also briefly considers the "obvious clarity" exception to the usual rule for determining whether a constitutional right was clearly established.  With respect to claims of the use of excessive force, this "clearly-excessive-even-in-the-absence-of-case-law standard is a difficult one to meet."  Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000).  Here, even if DeRoche's conduct is presumed to have violated Proch's constitutional rights, for all of the reasons previously discussed the conduct should not be considered "so far beyond the hazy border between

excessive and acceptable force that [DeRoche] had to know he was violating the Constitution even without case law on point." *See id.* at 926.  DeRoche therefore should retain his entitlement to qualified immunity.

For all of the foregoing reasons, the court concludes that DeRoche's motion for summary judgment on Proch's claim of the use of excessive force in violation of the Fourth Amendment (as well as any claim of unlawful arrest) is due to be granted.[16]  Such claims should be dismissed. Additionally, on the undisputed facts as outlined above, the court further concludes that Proch is not entitled to judgment as a matter of law and that his motion should therefore be denied.

<u>State Law Claim</u>

The court next must determine it should exercise jurisdiction over Proch's state law claim under Fla. Stat. § 943.1717, which pertains to the use of dart-firing stun guns.  The inquiry for this determination pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367, is "twofold." *See* <u>Baggett v. First National Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997), citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). First, the court must decide whether it has the power to hear the state law claims. *Id.*; *see also* 28 U.S.C. § 1367(a).  Second, if such power lies, the court must decide whether in its discretion it will decline to exercise jurisdiction. *Id.*; *see also* 28 U.S.C. § 1367(c).

Subsection (a) of § 1367 provides that a district court has supplemental jurisdiction "over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  The Eleventh Circuit has observed that "a district court has the power to exercise supplemental jurisdiction over all claims that 'arise out of a common nucleus of operative fact with a substantial federal claim.'"  <u>Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.</u>, 177 F.3d 1212, 1223 (11th Cir. 1999).  In the court's assessment of whether a federal claim is

---

[16]  The court noted in its March 11, 2011, Report and Recommendation that the question of the applicability of <u>Heck</u> to Proch's claim of the use of excessive force could be an open one at summary judgment (*see* Doc. 50 at 7, n.10).  In his motion for summary judgment, however, DeRoche has neither argued for dismissal of Proch's excessive force claim based on <u>Heck</u> nor has he submitted evidence in support of such a theory.  Absent adequate briefing and evidence on the issue, which would have afforded notice to Proch and—in his response—an opportunity to respond, the court will not address further the issue of whether <u>Heck</u> might bar Proch's excessive force claim.

sufficiently substantial, the issue is 'not whether the claims are without merit but whether the prior decisions inescapably render the claims frivolous.'" L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 427 (11th Cir. 1984) (quotation omitted).   In the instant case, Proch's Fourth Amendment claim of the use of excessive force was not frivolous, and it shares a common nucleus of operative facts with the state law claim sufficient to support supplemental jurisdiction.  Thus the court should have the power under 28 U.S.C. §1367(a) to hear Proch's state law claim.

Nevertheless, the court concludes it should decline to do so under the circumstances present in this case.  Pursuant to 28 U.S.C. § 1367(c), the court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court   has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, this court has recommended dismissal of Proch's Fourth Amendment claim[s] over which the district court has original jurisdiction.  "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).  This court has located no Florida cases which address § 943.1717 and only one unpublished federal district court case which even mentions it.  See Ochoa v. City of Miami, 2010 WL 1882159 (S.D. Fla. 2010) (stating that § 943.1717 may create a statutory duty of care for a city and "is indicative of the existence of a common law duty of care for the City in the training and supervision of its officers, including the way dart-firing stun guns are used.").  Based on the plain language of the statute,[17] and the virtual absence of case law

---

[17]  Section 943.1717. Use of dart-firing stun guns, provides:

(1) A decision by a law enforcement officer, correctional officer, or correctional probation officer to use a dart-firing stun gun must involve an arrest or a custodial situation during which the person who

interpreting it, the court questions whether under this statute a cause of action against an individual officer such as DeRoche even exists.  As Proch's state law claim appears to present a novel question of law and its resolution depends on determinations of state law, of which Florida courts should be the final arbiters, comity weighs in favor of this federal court's declining to exercise supplemental jurisdiction.  *See* <u>Hardy v. Birmingham Bd. of Educ.</u>, 954 F.2d 1546, 1553 (11th Cir. 1992).  Furthermore, as a fairness matter, it appears that Proch's state law claim, if one lies, would not be time-barred.  *See* Fla. Stat. § 95.11.

The dismissal of state law claims is strongly encouraged where the federal claims are dismissed prior to trial.  *See* <u>Baggett</u>, 117 F.3d at 1353; *see also* <u>Carnegie-Mellon Univ.</u>, 484 U.S. at 350 n.7.  Therefore, for all of the foregoing reasons, this court recommends that supplemental jurisdiction over Proch's state law claim should be declined.  Dismissal should be without prejudice to Proch's right to assert the claim in state court.  *See* <u>Crosby</u>, 187 F.3d at 1352.

**Conclusion**

---

is the subject of the arrest or custody escalates resistance to the officer from passive physical resistance to active physical resistance and the person:

(a) Has the apparent ability to physically threaten the officer or others; or

(b) Is preparing or attempting to flee or escape.

(2) The Criminal Justice Standards and Training Commission shall establish standards for instructing law enforcement, correctional, and correctional probation officers in the use of dart-firing stun guns. The instructional standards must include the effect that a dart-firing stun gun may have on a person.

(3) The basic skills course required for certification as a law enforcement officer must include instruction on the use of dart-firing stun guns.  The portion of the basic skills course on the use of dart-firing stun guns must be a minimum of 4 hours' duration.

(4) A law enforcement officer, correctional officer, or correctional probation officer who has not received the dart-firing stun gun training described in subsection (3) and who is authorized by his or her employing or appointing agency to carry a dart-firing stun gun after the effective date of this act must complete, before issuance and use of a dart-firing stun gun, the 4-hour dart-firing stun gun training described in subsection (3) or an equivalent training course provided by the officer's employing or appointing agency in accordance with the Criminal Justice Standards and Training Commission standards outlined in subsection (2).

(5) After completing the basic skills course, each law enforcement, correctional, and correctional probation officer who is authorized by his or her agency to use a dart-firing stun gun must complete an annual training course on the use of dart-firing stun guns.  The annual training course on the use of dart-firing stun guns must be a minimum of 1 hour duration.

For all of the foregoing reasons, the court recommends that DeRoche's motion for summary judgment be granted and that Proch's motion for summary judgment be denied.  Proch's state law claim pursuant to Fla. Stat. § 943.1717 should be dismissed without prejudice.

Accordingly, it is **ORDERED**:

Proch's motion for leave to file his response out-of-time (Doc. 108) is **GRANTED**.

And it is respectfully **RECOMMENDED**:

1.      That Defendant Robert R. DeRoche's motion for summary judgment (Doc. 105) be **GRANTED.**

2.      That Plaintiff Taurean Xavier Proch's motion for summary judgment (Doc. 95) be **DENIED.**

3.      That Proch's state law claim pursuant to Fla. Stat. § 943.1717 be **DISMISSED** without prejudice to his right to assert it in state court.

4.      That the clerk be directed to enter judgment in Defendant DeRoche's favor and close this case.

**DONE AND ORDERED** this 20th day of December 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**